**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION**

| | | |
|---|---|---|
| ROBISON, JEREMY, individually and on behalf of his son, a MINOR, and all similarly situated persons, | § § § § | |
| Plaintiffs, | § § | Case No. 1:17-cv-00508 |
| v. | § § | |
| CNA INSURANCE COMPANY, et al. | § § | |
| Defendants | § § | |

**DEFENDANT CONTINENTAL CASUALTY COMPANY'S REPLY
IN SUPPORT OF FIRST AMENDED MOTION TO EXCLUDE
EXPERT TESTIMONY OF DR. LINDELL K. WEAVER**

Continental Casualty Company ("Continental"), Defendant, files this Reply Brief in Support of its First Amended Motion to Exclude Expert Testimony of Dr. Lindell K. Weaver (filed June 29, 2021) [Doc. 132] (the "Motion").

**SUMMARY**

In their response, Plaintiffs concede that Dr. Weaver will only offer opinions on general causation, as opposed to both general *and* specific causation.  However, Plaintiffs' analysis of his proffered testimony far exceeds this limitation. Plaintiffs also misconstrue governing law, failing to explain the necessary showing Plaintiffs must make to rely upon evidence of general causation to establish specific causation. Moreover, Plaintiffs fail to address the fact that the opinions of Dr. Weaver, a non-examining physician, is contradicted by the examining physicians, meaning his opinions should be afforded little to no probative weight. Finally, Plaintiffs ignore the fact that in his report, Dr. Weaver fails to offer an individualized treatment plan for any single Plaintiff— undoubtedly because Dr. Weaver never examined a single Plaintiff in this case.  As such, Dr.

4839-3161-6242.5

Weaver should not be allowed to testify regarding any individual Plaintiff's specific medical condition, the specific cause thereof, the medically necessary treatment for any Plaintiff, or the costs for the treatment of such Plaintiff.

**ARGUMENT AND AUTHORITIES**

**A.**      **Plaintiffs admit that they only intend to offer Dr. Weaver as to general causation, yet far surpass this limitation.**

Plaintiffs readily concede that they only "intend to offer Dr. Weaver on **general causation**[.]"[1] General causation is whether a substance is capable of causing a particular injury or condition in the general population, while specific causation is whether a substance caused a particular individual's injury. *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 351 (5th Cir. 2007) (quoting *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 714 (Tex. 1997)). Carbon monoxide is present in the atmosphere—in automobile exhaust, generator exhaust, and the fumes from a barbecue grill.  The general causation question is what exposure level, both concentration and time, is required for carbon monoxide to cause a long-term brain injury.  Dr. Weaver fails to explain, so he has no relevant testimony on general causation to provide.

Even if Dr. Weaver's opinions are admitted, they should be limited to whether carbon monoxide is capable of causing certain injuries or conditions in the *general* population. By Plaintiffs' own admission regarding the limited nature of Dr. Weaver's proffered opinions, he cannot opine as to specific causation—i.e., whether exposure to carbon monoxide caused any specific Plaintiff's purported injuries, as alleged in this suit.

Plaintiffs' concession, one undoubtedly motivated by the fact that Dr. Weaver has never personally examined a single Plaintiff, conflicts with their disclosure of Dr. Weaver's opinions in

---

[1] *See* Plaintiffs' Response to Continental's Motion to Exclude Expert Testimony of Dr. Weaver, at p. 5 (emphasis added).

2

this case, which stated that he will testify as to the following:

- Evaluations and treatment required to address the medical consequences of the alleged carbon monoxide poisoning;

- Required and reasonableness of costs of future medical treatment;

- Diagnosis, prognosis and causation related to the brain damage and subsequent medical complications and impairments due to the alleged carbon monoxide poisoning; and

- All of the subjects and information contained within his reports, affidavit, and the subject matter covered in his deposition, once taken.[2]

Dr. Weaver initially provided a February 4, 2019 "preliminary" report that listed the 39 Plaintiffs but provided no specific opinions as to any of them.  He instead cites studies that indicated that a certain percentage of "carbon monoxide-poisoned patients" would have ongoing problems.  Without examining any of the individual Plaintiffs or providing any discussion about their individual complaints or conditions, Dr. Weaver opined that "almost all have brain injury caused by the carbon monoxide poisoning of January 28, 2016."  In other words, Dr. Weaver's report indicates that he intends to opine as to *specific* causation. *See Havner*, 953 S.W.2d at 714 ("[S]pecific causation is whether a substance caused a particular individual's injury.").

Now, however, Plaintiffs themselves admit that Dr. Weaver can only opine as to general causation—whether carbon monoxide exposure is capable of causing a particular injury or condition in the general population—*not* whether carbon monoxide exposure caused the specific injuries alleged by Plaintiffs.  Dr. Weaver's testimony, if any, should be restricted to that limitation.

**B.     Plaintiffs misconstrue governing law regarding causation.**

Despite conceding that Dr. Weaver is only offered to opine on general causation, Plaintiffs then cite to *Merrell Dow. Pharmaceuticals, Inc. v. Havner* for the proposition that "[i]n the absence

---

[2] *See* Exhibit B to Plaintiffs' Response, Expert Designation.

of direct, scientifically reliable proof of causation, claimants may attempt to demonstrate that exposure to the substance at issue increases the risk of their particular injury," such as epidemiological studies. 953 S.W.2d at 715. Plaintiffs must do more than simply introduce into evidence studies showing a substantially elevated risk. *Id*.at 720. This burden would include "proof that [1] the injured person was exposed to the same substance, [2] that the exposure or dose levels were comparable to or greater than those in the studies, [3] that the exposure occurred before the onset of injury, and [4] that the timing of the onset of injury was consistent with that experienced by those in the study." *Id*. Moreover, if other plausible causes of the injury exist, the Plaintiff must offer evidence excluding those causes with reasonable certainty, such as performing a differential diagnosis assessment. *Id*.

Here, Plaintiffs have failed to carry their burden to establish that Dr. Weaver fulfilled all of these requirements. It is also undisputed that Dr. Weaver did not perform a differential diagnosis assessment, which begins with an expert's "ruling in" of plausible causes of an injury, then proceeding to rule out less likely causes until the most likely cause remains. *See Junk v. Terminix Intern. Co.*, 628 F.3d 439, 449 (8th Cir. 2010) (quoting *Kudabeck v. Kroger Co.*, 338 F.3d 856, 860–61 (8th Cir. 2003)). Rather, Dr. Weaver cites statistics as to how many individuals he would *expect* to experience a significant injury out of the 179 individuals purportedly present on the day of the incident; since the number of named Plaintiffs is less than the expected number, he concludes that most or all of them must have such injuries.

## C.    Dr. Weaver cannot opine on treatment plans and associated costs for Plaintiffs he has never seen.

The fact remains that Dr. Weaver's one-size-fits-all treatment plan, which purports to identify future treatment costs, for the Plaintiffs—none of whom he has examined—conflicts with

4

the Plaintiffs' own examining physicians.[3] In attempting to deflect from Dr. Weaver's failure to personally examine a single Plaintiff in the past five years, Plaintiffs cite a footnote in *Hayes v. Gardner* 376 F.2d 517, 521 (4th Cir. 1967).  The footnote, however, corresponds to a paragraph in which the Fourth Circuit held that a non-examining physician's testimony could *not* serve as substantial evidence when contradicted by a treating physician. *Id*. Further, the non-examining physician in *Hayes* himself admitted that he was "sure a family physician is always more familiar with a patient than one that is just looking at the objective evidence we have on paper." *Id*.

**D.      Dr. Weaver does not opine on a specific treatment plan needed for any Plaintiff**.

Dr. Weaver's report fails to disclose a specific treatment plan, or associated costs, for any specific Plaintiff.  For example, no one reading either of Dr. Weaver's reports could determine what Dr. Weaver opines is the cost to diagnose or treat Kenneth Martin (one of the adult plaintiffs) or R.R. (one of the minor plaintiffs). "[A]ll expert witnesses … will be held to the disclosures contained within the four corners of their reports, and will not be permitted to backfill additional detail during trial testimony based on information that was not disclosed in the expert's report." *See RMail Ltd. v. Amazon.com, Inc.*, 2:10-CV-00258-JRG, 2019 WL 10375642, at *5 (E.D. Tex. June 12, 2019).  Since Dr. Weaver failed to disclose any specific treatment plan, or associated cost, in his expert report, he should be prohibited from testifying to one at trial.

**REQUEST FOR RELIEF**

Continental Casualty Company respectfully requests that the Court grant its Motion and exclude the opinions and testimony of Dr. Lindell K. Weaver, and for all other and further relief to which it is justly entitled.

---

[3] *See* Exhibit E to Continental's Motion, Dr. Brown Deposition, at 60:11-61:5; *see also* Exhibit F to Continental's Motion, Dr. Prause Deposition, at 39:1-40:2. Plaintiffs' examining physicians oppose Dr. Weaver's treatment plan. Dr. Brown and Dr. Prause, for example, who have treated a number of Plaintiffs, disagree with Dr. Weaver's treatment plan for R.R. and C.H., respectively, stating that neither need Adderall, Topamax, Rizatriptan, and/or Lunesta.

Respectfully submitted,

**HUSCH BLACKWELL LLP**

By:  */s/ David H. Timmins*
David H. Timmins
State Bar No. 00785106
david.timmins@huschblackwell.com
1900 N. Pearl St., Suite 1800
Dallas, TX  75201
Telephone:  214-999-6185
Facsimile: 214-999-6170

**FOLEY & LARDNER LLP**

By:  */s/ Mike Seely*
Mike Seely
State Bar of Texas No. 24054148
mseely@foley.com
1000 Louisiana, Suite 2000
Houston, Texas  77002-5011
Telephone:      713-276-5500
Facsimile:      713-276-5555

**FAEGRE DRINKER BIDDLE & REATH LLP**

By: */s/ Wayne B. Mason*
Wayne B. Mason
Texas Bar No. 13158950
wayne.mason@faegredrinker.com
Susan Egeland
Texas Bar No. 24040854
susan.egeland@faegredrinker.com
Matt C. Sapp
Texas Bar No. 24063563
matt.sapp@faegredrinker.com
1717 Main Street, Suite 5400
Dallas, Texas 75201
(469) 357-2500 (Telephone)
(469) 327-0860 (Fax)

**ATTORNEYS FOR DEFENDANT**
**CONTINENTAL CASUALTY COMPANY**

6

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document has been served upon the following counsel on July 20, 2021 by filing with the Court's electronic filing system, which effected service on all counsel of record.

Jane S. Leger
Paul F. "Chip" Ferguson, Jr.
Mark C. Sparks
The Ferguson Law Firm, LLP
350 Pine Street, Suite 1440
Beaumont, TX  77701
Telephone:  409-832-9700
Facsimile:  409-832-9708
jleger@thefergusonlawfirm.com
cferguson@thefergusonlawfirm.com
mark@thefergusonlawfirm.com

Scot E. Sheldon
Moore Landrey, LLP
905 Orleans
Beaumont, TX  77701
Telephone: 409-835-3891
Facsimile:  409-835-2707
ssheldon@moorelandrey.com

*/s/ Mike Seely*
Mike Seely

7

4839-3161-6242.5